GREGG et al. v. MEGARGEL.

(District Court, S. D. New York. January 24, 1918.)

No. 194.

1. JOINT ADVENTURES ⊖⇒4(1), 5(2) — SYNDICATE MANAGERS — RELATION TO MEMBERS.

A circular letter was sent by defendants to each complainant, stating that defendants were negotiating for the purchase of stock of a certain corporation and were organizing a syndicate to purchase from them a portion of such stock, not exceeding 100,000 shares, "when and if acquired by us at a price of $7 per share." Defendants were to be managers of the syndicate, with full powers and no liability, except for the exercise of good faith, and with the right to charge all expenses of the acquisition of the stock to the syndicate. They might also become members. Complainants were invited to become members of the syndicate by signing an acceptance on the letter, which they did. *Held* that, under the contracts so made, defendants became vendors, managers, and members of the syndicate, that as managers or agents of the syndicate they assumed a fiduciary relation to the other members, and that a bill by complainants alleging fraud and deceit, in that, after the syndicate was formed, defendants purchased the stock at $3.50 per share and charged complainants $7, without disclosing the price paid, stated a cause of action which entitled complainants to a preliminary injunction restraining defendants from disposing of the stock in their hands until the case could be heard on the merits.

2. JOINT ADVENTURES ⊖⇒4(1) — CONSTRUCTIVE TRUSTS — MANAGERS OF SYNDICATE — RELATION TO MEMBERS.

Syndicate managers are held to the use of unambiguous language in circulars and letters to syndicate members, and words of doubtful meaning or application must be strictly construed against them.

3. PRINCIPAL AND AGENT ⊖⇒75 — TRUSTS ⊖⇒237 — VIOLATION OF DUTY BY TRUSTEE — REMEDIES OF BENEFICIARY.

A principal, if he finds that his agent or trustee has made secret profits, may at his option affirm the transaction and bring suit in equity for an accounting, and have the profits made by the agent or trustee deemed to be, in equity, the property of the principal, and to this end he is entitled to injunctive relief.

4. JOINT ADVENTURES ⊖⇒4(1) — CONSTRUCTIVE TRUSTS — MANAGERS OF SYNDICATES.

Courts will hold syndicate managers and promoters to absolute frankness of expression, purpose, and dealing with their investors, and to strict accountability for violations of the trust thus imposed.

In Equity. Suit by Nathan Gregg and others against Roy C. Megargel, doing business under the firm name of R. C. Megargel & Co. On motion for preliminary injunction. Motion granted.

Henry Wollman (of Wollman & Wollman), and George O. Redington (of White & Case), both of New York City, Clarence Alexander, of Yonkers, N. Y., and Herbert Haase (of Haase, Hanley & Howard), of Chicago, Ill., for the motion.

Frederick J. Powell and Marvin W. Wynne (of Powell, Wynne, Lowrie & Ruch), both of New York City, opposed.

MANTON, District Judge. Plaintiffs became syndicate members of a syndicate formed by the defendant to purchase stock of the Glenrock

Oil Company. This bill in equity is brought under the claim of the relation of cestuis que trustent against the defendant claiming that they are agents and trustee.

[1] The agreement consists of a letter, marked "Private and Confidential," dated August 17, 1917, and an acceptance of its terms by the syndicate members. The letter is as follows:

Dear Sirs: The Glenrock Oil Company, Incorporated, has been recently incorporated under the laws of the state of Virginia with a total authorized capital stock of $10,000,000, divided into 1,000,000 shares, of the par value of $10 each. The corporation was organized for the purpose of acquiring by direct purchase, or through controlling interests in other corporations, producing and prospective oil properties located in the state of Wyoming and elsewhere. We are negotiating for the purchase of certain shares of the capital stock of this corporation, and are forming a syndicate to acquire from us a portion of said stock to the extent of not exceeding 100,000 shares, when, as, and if acquired by us, at a price of $7 per share.

The syndicate will terminate on October 15, 1917, subject to our right to dissolve it at an earlier date, and to our right to extend it from time to time beyond said date for an aggregate period not to exceed 60 days. We are to be managers of the syndicate and may be members thereof, notwithstanding our relations as vendors thereto and managers thereof, and as such managers we shall have full power to determine, within the limit above stated, the amount of stock to be purchased from us by the syndicate, and with full power to sell, purchase, resell, and repurchase, for account of the syndicate, at public or private sale, any shares of stock at such prices and on such terms as we may deem fit; to pay the usual brokerages, as well as such commissions for effecting sales or purchases for account of the syndicate as we may deem proper: to charge the syndicate reasonable commissions and the usual brokerages for sales or purchases effected by us; to make advances to the syndicate, charging interest thereon; to make or procure loans and secure the same by pledge of syndicate stock or otherwise, to such amounts and in such manner as from time to time we may deem expedient; and generally to act in all respects as in our opinion may be to the interest of the syndicate. We shall not be liable under any of the provisions of this letter, or for any matter connected therewith, except for want of good faith, and no obligation not herein expressly assumed by us shall be deemed to be implied.

The syndicate managers may purchase, sell, or otherwise dispose of, or be interested in the purchase, sale, or other disposition of, any stock or other securities of said corporation, or its subsidiary companies, or contract in any respect with it or them, without restriction and without responsibility therefor to the syndicate. All expenses incurred in the acquisition of such stock for the syndicate, in the marketing of the same, and all other expenses incurred by us as syndicate managers shall be charged against the syndicate. We shall make no charge to the syndicate for acting as syndicate managers, other than reasonable commissions and the usual brokerages for sales or purchases effected by us, being otherwise compensated in our purchases of said stock.

Your total obligation shall not in any event exceed the amount of your participation as herein stated, but the failure of any participant to perform any part of his obligation hereunder shall not release any other participant. Nothing herein contained shall constitute the participants partners with the syndicate managers or with one another. Syndicate participations are not transferable, except with the written consent of the syndicate managers. The syndicate managers reserve the right to cancel the participation of any member violating the syndicate provisions, and to hold him liable for any losses sustained by such violation. The firm constituting the syndicate managers acts as a copartnership, and all rights and powers hereunder of said firm shall vest in any copartnership which shall be the sole successor of said firm without further act or assignment.

248 F.—61

We, as syndicate managers, may grant to, or withhold from, any syndicate participants the privilege of withdrawing their respective allotments of stock, or any part thereof, for investment. No participant withdrawing stock shall be entitled in respect thereof to share in any profits of the syndicate. Applications to make such withdrawals, in whole or in part, must be made to us upon written acceptance of participation within the period below provided, and any such application may be refused or granted by us in such cases and to such extent as we may, in our discretion, determine. In respect of your participation, or any part thereof, so withdrawn, you will be required to pay at the time and in the manner hereinafter provided an additional sum of $1 per share on the number of shares so withdrawn to cover the proportion of the syndicate expenses attributable to such withdrawn participation. Upon the completion of all payments in respect of such withdrawn stock, you will be entitled to receive an appropriate certificate, issued by or on behalf of the syndicate managers, reciting that you are the owner of the number of shares specified therein and will be entitled to receive the same upon the termination of the syndicate. No stock so withdrawn from sale by any participant shall be delivered to him until the termination of the syndicate.

We have reserved for you, subject to the acquisition by us of such stock and to the reduction of such participation in case of oversubscription as hereinafter provided, a participation in the syndicate of ——— shares of such stock, which, at the syndicate price of $7, amounts to $———. Should you desire to accept such participation, please confirm your assent to the conditions as herein stated by signing the inclosed acceptance and return the same to us at No. 27 Pine street, New York City, on or before August 23, 1917, after which time all offers of participation not so accepted will be deemed refused and canceled. This letter and your acceptance will thereupon constitute the contract between us. All acceptances, in whole or in part, are subject to our approval, and in case of any oversubscription the syndicate managers shall have the right to allot to you such less amount of participation in the syndicate than the amount reserved as above stated, as they in their uncontrolled discretion may determine.

You will be required to make payment in New York funds in respect of your obligation hereunder to the syndicate managers at their office No. 27 Pine street, New York City, on three days previous notice stating the amount of participation in the syndicate allotted to you by the syndicate managers as above stated, mailed, or telegraphed to you by us, against delivery to you at said office of subscription receipts representing your payment. Such call may, in our discretion, be for full payment or for payment in installments.

Yours truly,          R. C. Megargel & Co., Syndicate Managers."

The corporation was organized "for the purpose of acquiring by direct purchase, or through controlling interests in other corporations, producing and prospective oil properties located in the state of Wyoming and elsewhere." The defendants claim to have obligated themselves to purchase 100,000 shares from one Collins, of Forsythe, Mont. Under this agreement, the defendants, purchasers of the stock, became, first, vendors of the stock to the syndicate; second, agents and promoters; and, third, members of the syndicate.

Plaintiffs claim that as syndicate managers it was incumbent upon them to make known to them the purchase price of the stock, and that the failure to do so constitutes a fraud and breach of the fiduciary relationship existing between the plaintiffs and defendants as their syndicate managers or promoters, and, further, that the sale of stock at $7 a share to the syndicate, after having paid but $3.50 per share, was such a fraud and deceit as entitled plaintiffs to an accounting and to compel the defendants to relinquish or turn over to them all profits which in equity belong to them, to compel them to

turn over all amounts which they obtained from them by this alleged fraudulent representation as to what they paid for the stock, and to enjoin them from selling or disposing of the said property in their hands until the amount which they owe, if anything, against the stock is judicially ascertained in this action, and for an accounting of their transactions with reference to this syndicate.

The moving papers make claim of misrepresentations made as to the purchase price of the stock by the defendants, and in addition thereto there are these circumstances which, a trial judge may determine to be a breach of the fiduciary relations existing between the plaintiffs and defendants, so as to warrant the equitable relief or a portion thereof as demanded by the plaintiffs. The property was not purchased by the Glenrock Oil Company, at least no statement was made of such purchase in the circular letter referred to. The property is in no way described. Considerable discretion was given to Megargel, as syndicate manager. The purchase was not predicated upon any condition that any specific or particular property was to be bought. Therefore the real or fanciful value of the stock was left largely for determination to the judgment of the syndicate managers. They were occupying the triple capacity of vendors, syndicate managers, and members of the syndicate, with the fullest powers as syndicate managers. Their statement reads:

"We are negotiating for the purchase of certain shares of the capital stock of this corporation, and forming a syndicate to acquire from us a portion of said stock not to exceed 100,000 shares, when, as, and if acquired by us at a price of $7 per share."

The contention of the plaintiff is that this language indicates that the defendants would pay $7 a share, which they would turn over to the syndicate at $7 a share, and it is argued that a reasonable man, reading this language, would give such an interpretation to it. But, further in the letter, it is stated that the syndicate price is $7 per share, and that all expenses incurred in the acquisition of the stock for the syndicate shall be charged against the syndicate. This language, used by syndicate managers, who promoted the syndicate, purchasing the stock from themselves, and failing to reveal by any statement the price of the stock, when the affidavits indicate that they had not yet paid a cent for the stock, but were paying for it as they sold it to the syndicate members, coupled with the charge of misrepresentation and fraud in the affidavits, would indicate a basis upon which a preliminary injunction should be granted, so as to keep the stock in its present ownership and prevent its being disposed of to innocent purchasers during the pendency of this action. There is some language in the letter which would indicate that they were making no charge to the syndicate for acting as syndicate managers, other than reasonable commissions and the usual brokerage for sales and purchases effected by them, and being otherwise compensated in the purchase of said stock. But the language is not such as would indicate that they were to be compensated in the transaction by the profit which would accrue to them from such sale to the syndicate at such price.

[2] The courts have been very strict in holding syndicate managers

to the use of unambiguous language in statements and circular letters, and words of doubtful meaning or application must be strictly construed against the author. With this vast power of discretion vested in them, by reason of the terms of this letter, the defendants protected themselves by providing that "we shall not be liable under any of the provisions of this letter, or for any matter connected therewith, except for want of good faith." That is, they assumed the agent's liability, and nothing more, and that was for good faith, and they further went on to say "that no obligation not herein expressly assumed by us shall be deemed to be implied," and they reserved the right of distribution or reduction, of the amount subscribed for, to each member.

[3] On the whole, the language of this circular letter is inviting and alluring, but is not free from ambiguity, and is not so open and free in expression to the ordinary reader as to absolve the defendants from the complaint of the plaintiffs, particularly where their complaint is coupled with charges of fraud and misrepresentation. A principal, if he finds his agent or trustee has made secret profits, or in any way violated his duty and obligation to him, can either disaffirm the transaction or let it stand and bring a suit in equity for an accounting, and have the profits made by the agent or trustee deemed to be equitably the property of the principal, and to this end he is entitled to injunctive relief. Marvin v. Brooks, 94 N. Y. 71; McKinley v. Williams, 74 Fed. 94, 20 C. C. A. 312.

[4] A question is presented here whether the defendants, because of their relation as syndicate managers or promoters, were not in fact, buying the stock for the plaintiffs, as syndicate members, instead of themselves; but if they were purchasing for themselves, whether they were entitled to take a profit without first making that clear, and also the amount thereof, to the joining members of the syndicate. In California Mining Co. v. Walls, 170 Cal. 285, 149 Pac. 595, a case of a promoter of a company, the court said:

"The promoter of a company, like its directors, is deemed to sustain toward the members of the company the relation of a trustee towards his cestui que trust. This being so, he will not be permitted to speculate out of that relation, or to derive secret advantages from it. He is bound to disclose to them fully all material facts touching his relation to them, including the amount which he is to get for his services as promoter, usually called 'promotion money.'"

It has been held that it is only where the promoter informs every subscriber, or his director informs every fellow director and stockholder, that he is personally interested, and the amount of profit he expects to make on a sale to a corporation, that a promoter or director will be permitted to make or retain the profit on such a sale. In Brewster v. Hatch, 122 N. Y. 349, 25 N. E. 505, 19 Am. St. Rep. 498, Follett, Chief Justice, said:

"The question is, Was the relation between these litigants simply that of vendors and vendees of shares to be issued, or was it one of trust and confidence, binding the defendants to the exercise of good faith and to disclose such information as they possessed affecting the value of the property in which the plaintiffs were induced to purchase an interest. * * * It is conceded and found by the court that the defendants did not disclose the amount which they were to pay for the mines. * * * These papers read

in the light of the purpose of the defendants, as disclosed by their evidence, seem to have been devices to cover the underlying scheme by which the corporation was to be organized, largely for the benefit of the promoters, but wholly at the risk and expense of the subscribers. We do not think that the inference contended for by the defendants can be justly drawn from the meager disclosures which they made in the documents put forth. They knew that they, and they only, absolutely controlled the scheme, and were to determine whether it should be carried out, and, if so, when and how. We think that the plaintiffs were led to believe, and had the right to believe, from the documents and from the circumstances that the defendants were acting in the interest of all the investors, and that they knew that the plaintiff so believed."

The cases of Heckscher v. Edenborn, 203 N. Y. 210, 96 N. E. 441, and Sim v. Edenborn, 242 U. S. 131, 37 Sup. Ct. 36, 61 L. Ed. 199, indicate that the courts intend to hold syndicate managers to absolute frankness of expression, purpose, and dealing with their investors, and to hold promoters to strict accountability for violations of the trust thus imposed. I think this should particularly apply, where the defendants have occupied the three capacities in these transactions. At least, I think, where it is claimed that there is likelihood of the fruits of the litigation being lost for want of an injunction, in the event of success of the plaintiffs at the trial, I should grant the injunction and permit the merits of the case to be determined by the trial judge.

The motion for a preliminary injunction will be granted.